# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00639-SCT

*LATOYA DENISE MOORE, A MINOR BY AND
THROUGH HER NEXT FRIEND, JEROME MOORE*

*v.*

*MISSISSIPPI VALLEY GAS COMPANY, A
MISSISSIPPI CORPORATION AND RHEEM
MANUFACTURING COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/11/2002 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SUZANNE GRIGGINS KEYS |
| ATTORNEYS FOR APPELLEES: | MYLES A. PARKER |
| | ROBERT DOUGLAS MORGAN |
| | CHARLES E. GRIFFIN |
| | JAMES L. CARROLL |
| | DENNIS BROWN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 11/06/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., WALLER AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This products liability case is on appeal from an order of the Hinds County Circuit Court, First

Judicial District, granting summary judgment to Mississippi Valley Gas Company (MVG) and Rheem

Manufacturing Company (Rheem).  The complaint in this matter was filed on July 29, 1996, by LaToya

Denise Moore, a minor by and through her next friend, Daphne Sultan. Daphne Sultan, her mother, has since died, and Latoya's father, Jerome Moore, has been substituted as her next friend.

¶2.    The complaint alleged that on February 19, 1989, LaToya suffered injury when she fell into a tub of hot water and that the hot water was produced by Rheem's gas water heater. Moore contended that Rheem's water heater was unreasonably dangerous in design, that a feasible alternative existed, and that Rheem also failed to warn of the danger of its use.

¶3.    MVG and Rheem answered, denying any liability. Discovery proceeded in this matter after which MVG and Rheem filed a combined motion for summary judgment and memorandum in support of summary judgment on September 5, 2001. On December 5, 2001, Moore filed a response to the motion for summary judgment and a supplemental response on January 18, 2002. The trial judge granted MVG and Rheem's motion on March 12, 2002. It is from this order that Moore has filed the instant appeal. The following issues are presented for consideration by this Court:

I.     WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE IS A GENUINE ISSUE OF MATERIAL FACT CONCERNING:

A. THE IDENTIFICATION OF THE PRODUCT INVOLVED;

B. THE DEFECTIVE CONDITION AND UNREASONABLE DANGEROUSNESS OF THE PRODUCT;

C. THE INADEQUACY OF WARNING;

D. THE FEASIBLE ALTERNATIVE DESIGN.


II.    WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THE DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

**FACTS**

¶4.      At approximately 8:00 p.m. on February 18, 1989, Deborah Sultan decided to take a bath at her home located at 511 Hemlock Street in Jackson, Mississippi. On the night the incident occurred, eleven people who resided in the home were present, including Deborah Sultan's eighteen-year-old daughter, Plaintiff Daphne Sultan, along with her eleven-month-old daughter, Plaintiff LaToya Moore.

¶5.      Deborah Sultan only put hot water in the bathtub and filled it approximately half full and then left the bathroom to let the water cool down. Deborah Sultan partially closed the door. Approximately five minutes after Deborah Sultan left the bathroom, her nine-year-old daughter, Maranda, told her "the baby was in the tub." Deborah then rushed to the bathroom and found plaintiff Daphne Sultan attempting to remove LaToya's clothes. An ambulance was called, and LaToya was rushed to the hospital. It was determined that LaToya had sustained hot water burns over 90% of her body.

¶6.      University Hospital physician, Dr. Mike Osborne, informed the Jackson Police that LaToya had suffered a "prolonged exposure to hot water, not just a quick submersion."

¶7.      Both plaintiff Daphne Sultan and Deborah Sultan initially told the police that LaToya fell in the bathtub of hot water while unsupervised and "that they don't normally leave LaToya unattended while bath water is running because she has fallen in this bathtub before." However, plaintiff Daphne Sultan changed her story a month later when on March 31, 1989, she reported to the police that her mother's boyfriend, Glenn Stephenson, had intentionally put LaToya in the tub of hot water. Daphne Sultan returned to the police fifteen months later and renewed her accusation against Stephenson. Moreover, in different therapy sessions, Daphne Sultan repeatedly told counselors with Catholic Charities that Stephenson had badly burned LaToya.

¶8.     Despite her accusations against Stephenson, Daphne Sultan eventually filed this lawsuit on July 29, 1996, wherein she blamed the incident on the landlord, Defendant Gene Rice, MVG, and Rheem. Gene Rice was ultimately dismissed with prejudice.

## DISCUSSION

### A. THE IDENTIFICATION OF THE PRODUCT INVOLVED.

¶9.     Moore argues that the accused hot water heater was a 40-gallon Rheem hot water heater. The record reveals that there is no witness who can identify the make, model, or manufacturer of the allegedly defective hot water heater. The only evidence of any involvement by Rheem is a sales invoice stating that Cornelius Williams, who previously resided at 511 Hemlock, purchased a 40-gallon hot water heater, Serial #0181M17815 (the 1981 hot water heater), from MVG on February 13, 1981. This receipt does not indicate at what address the listed hot water heater was installed. Williams is deceased. Waller Plumbing, who installed the hot water heater, no longer exists. In 1991, Rice, the landlord, replaced the 1981 hot water heater with a new one. This was due to a leak which developed in the hot water heater. The 1981 hot water heater was discarded, and Rice is unaware whether it was a Rheem product or bore the Serial #0181M17815. Several years later, the 1991 hot water heater began to leak, and it was replaced in 1996 with yet another hot water heater.

¶10.    More than seven years after LaToya's 1989 burning, Rheem and MVG first learned of the incident when they were served with the instant lawsuit, which was filed in 1996. Because the 1981 hot water heater had already been destroyed, Rheem and MVG did not have the opportunity to identify, view, inspect or test the hot water heater. Thus, no one is certain whether the 1981 hot water heater was in fact a Rheem product. Therefore, a jury verdict would be based on speculation and/or conjecture. Mississippi law is

clear and unambiguous that such a verdict cannot stand. ***Barnes v. Taylor***, 347 So.2d 972, 974 (Miss. 1977). We find that there is insufficient evidence to determine the product/manufacturer identification.

 B. THE DEFECTIVE CONDITION AND UNREASONABLE DANGEROUSNESS OF THE PRODUCT.

 C. THE INADEQUACY OF WARNING.

 D. THE FEASIBLE ALTERNATIVE DESIGN.

 II. SUMMARY JUDGMENT AS A MATTER OF LAW.

¶11. Inasmuch as sub-issues of issue one and issue two are related, they will be discussed simultaneously. Moore argues that the defective condition of the hot water heater created an unreasonably dangerous product which failed to adequately warn consumers of its hazardous design and feasible design alternative.

¶12. The provisions for a products liability claim is detailed in Miss. Code Ann. § 11-1-63 which states:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

 (i)1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

 2. The product was defective because it failed to contain adequate warnings or instructions, or

 3. The product was designed in a defective manner, or

 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

 (ii)The defective condition rendered the product unreasonably dangerous to the user or consumer; and

 (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

¶13. Thus, it is incumbent upon the plaintiff in any products liability action to show that the defendant's product was the cause of the plaintiff's injuries. Assuming arguendo that the 1981 hot water heater was

in fact a Rheem brand, the evidence is undisputed that it would have complied with all mandatory and voluntary government and industry standards, including the standards of the American Gas Association (AGA) and the American National Standards Institute (ANSI). All models of Rheem hot water heaters are tested and certified to the standards promulgated by the AGA and ANSI. More specifically, a 1981 Rheem hot water heater would have complied with ANSI Z21.10.1 and contained the scald warning language required under the standard.

¶14. Additionally, Deborah Sultan was renting the residence under the Section 8 housing program of Housing and Urban Development (HUD), and HUD inspected the residence prior to the Sultan's moving into it. HUD'S May 5, 1988, inspection revealed no problems with the 1981hot water heater. As part of its annual review process, HUD conducted another inspection on March 30, 1989, six weeks after the incident. HUD again found nothing wrong with the 1981 hot water heater. Although HUD listed a number of needed repairs, none of the repairs related to the 1981 hot water heater or the home's hot water temperature. Deborah Sultan never complained to HUD inspectors that the water was too hot or that there was anything wrong or defective with the 1981 hot water heater.

¶15. This Court applies a de novo standard of review to a trial court's grant or denial of summary judgment. *Hudson v. Courtesy Motors, Inc.,* 794 So.2d 999, 1002 (Miss. 2001). Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure, which states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of demonstrating that no genuine issue of fact exists is on the moving party. However, "when a party opposing summary judgment on a claim or defense as to

6

which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." *Galloway v. Travelers Ins. Co.,* 515 So.2d 678, 684 (Miss. 1987). Moore has failed to meet that burden here.

## CONCLUSION

¶16.     It is truly tragic that young LaToya Moore was seriously injured.  However, Moore's claims were properly dismissed because she has  failed to prove a case beyond mere speculation.  There is no evidence that, the accused hot water heater was installed at Deborah Sultan's residence, and there is no evidence that, even if installed there in 1981,  the same hot water heater was still operating there in 1989.  Because the product was destroyed, Moore cannot prove that the accused hot water heater reached the consumer without substantial change or alteration.

¶17.     Additionally, there is no evidence to support Moore's contention that Rheem and MVG grossly disregarded or were recklessly indifferent to Moore's safety.  In 1981, Rheem's hot water heater would have been tested and certified to industry standards.  For the aforementioned reasons, we affirm the summary judgment for MVG and Rheem.

¶18.     **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

7